DAVID W. QUINTO, ESQ. (SBN 106232)
    davidquinto@dwt.com
SCOTT R. COMMERSON, ESQ. (SBN 227460)
    scottcommerson@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:  (213) 633-6800
Fax:  (213) 633-6899

DIXON Q. DERN, ESQ (SBN 25007)
    ddern@dixlaw.com
1262 Devon Avenue
Los Angeles, California  90024
Tel: (310) 275- 2003
Fax: (209) 850-4204

Attorneys for Plaintiff
Academy of Television Arts & Sciences

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

(Western Division)

| | |
|---|---|
| ACADEMY OF TELEVISION ARTS & SCIENCES, A California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>HERITAGE AUCTIONS, a Texas corporation; PATRICIA HOUSTON, individually and on behalf of the WHITNEY HOUSTON ESTATE; and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>COMPLAINT for:<br>　1. Conversion,<br>　2. Replevin,<br>　3. Copyright Infringement, and<br>　4. Declaratory Relief<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Academy of Television Arts & Sciences (the "Television Academy") alleges:

## NATURE OF THE ACTION

1.      The Television Academy is a non-profit corporation founded in 1946 with the mission of promoting excellence in television and the development of the television industry in the United States.  Since 1949, as an incentive for members of the television industry to strive for excellence and as a means of recognizing persons who make outstanding contributions in their respective creative fields, the Television Academy has conferred annual awards (known as "Emmys" or "Emmy Awards") to artists in various categories of achievement.

2.      The Emmy Award represents the pinnacle of success and professional recognition in the television industry.  The prestige associated with the Emmy Award is unparalleled by any other television award.  To maintain the award's incalculable value and uniqueness, the Television Academy has established careful procedures for selecting the recipients of its Emmy Awards and distributing Emmy Statuettes to the winners.

3.      Although the Television Academy pays a trophy manufacturer to make copies of the Emmy Statuette for the purpose of honoring winners of the Primetime Emmys, it neither sells nor transfers title to those Emmy Statuette copies.  Instead, it retains title to the copies.  When the Television Academy honors an artist for an achievement, it lends a copy of the Emmy Statuette to the artist to signify and symbolize that honor.  The Television Academy permits all artists so honored to retain possession of an Emmy Statuette copy for life, and permits the artists' heirs and successors in interest to retain custody of the copies to symbolize the achievements of the deceased honorees.

4.      When the Television Academy honors an artist and offers the artist a copy of the Emmy Statuette as a symbol of the artist's achievement, the Television Academy places the artist on notice that it retains title to it.  From 1978 through

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

1  1994, the notice stated: "(i) the Emmy statuette is the property of and all rights are
2  reserved by the Academy of Television Arts & Sciences. (ii) the Emmy statuette
3  may not be reproduced or used in any commercial manner unless otherwise
4  permitted by the Academy, it being understood that possession of the same is solely
5  for the benefit of the recipient and the recipient's heirs or succession in interest and
6  (iii) if a recipient or the recipient's heir or successor in interest proposes to sell or
7  otherwise dispose of the Emmy statuette, such persons shall be obligated to return
8  the statuette to the Academy of Television Arts & Sciences which will retain the
9  same in storage in memory of the recipient." The 1978-1994 version of the notice
10  is referred to herein as the "Applicable Notice."

11       5.     In 1978, the Television Academy, together with the National Academy
12  of Television Arts & Sciences ("NARAS"), registered the Emmy Statuette for
13  protection under the federal Copyright Act.   The copyright is valid and subsisting.
14  Because the Television Academy owns the copies of the Emmy Statuette it shares
15  with its honorees, the first-sale doctrine does not apply to the copies.  Any sale of
16  the Emmy  Statuette therefore violates the Television Academy's distribution right
17  under the Copyright Act.

18       6.     In 1979, the Television Academy and NARAS jointly obtained a
19  federal registration of the EMMY word mark and later registered the EMMYS word
20  mark as well.

21       7.     In 1986, the Television Academy honored the acclaimed singer
22  Whitney Houston ("Ms. Houston") with a Primetime Emmy Award, symbolized by
23  an ©Emmy® statuette (the "Houston Emmy"), in the category of Outstanding
24  Individual Performance in a Variety or Musical Program for her performance of
25  "Saving All My Love for You" at the 28th Annual Grammy Awards ceremony.  In
26  accepting the statuette, Ms. Houston was bound by the aforementioned notice
27  affixed to the base of the statuette.

28

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

8.     Ms. Houston died tragically in 2012.  The Television Academy recently learned that Defendant Heritage Auctions ("Heritage") plans to sell the Houston Emmy at auction in Beverly Hills on June 24, 2016.  The Houston Emmy is currently listed on Heritage's Web site with a starting bid of $10,000.

9.     The Television Academy has provided written and oral notice to Heritage of its objection to the sale of the Houston Emmy based on its ownership of the Houston Emmy, the restrictions placed on its possession, and the infringement of the Television Academy's copyright.  However, Heritage has illogically claimed that because the notice described in paragraph 4, above, was no longer affixed to the statuette when it was received by the trustee for Ms. Houston's estate, the Television Academy was somehow divested of title to the statuette and Ms. Houston's successors and Heritage (as her successors' agent) gained title to the statuette, free of the restrictions imposed by the notice.

10.     The Television Academy seeks to enforce its rights with respect to the Houston Emmy, including enjoining its sale and/or recovering any and all profits obtained from the sale, and obtaining equitable relief including, *inter alia*, declaring that the Houston Emmy is held in constructive trust for the Television Academy and directing Defendants to return it to the Television Academy for storage in Ms. Houston's memory.  The Academy also seeks damages, costs, and attorneys' fees under the Copyright Act.

11.     If Heritage's highly publicized auction is allowed to go forward, it will undermine the prestige of the Emmy Award and tarnish the Television Academy's reputation, leaving the impression that the highest honor in the television industry is a commodity available for sale to the highest bidder.

## ALLEGATIONS RELEVANT TO ALL CLAIMS
## PARTIES, JURISDICTION AND VENUE

12.     The Television Academy is, and at all times mentioned herein was, a non-profit corporation organized under the laws of the State of California, with its

3

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

principal place of business in Los Angeles County, California.  The Television Academy was founded in 1946.

13. Defendant Heritage Auctions ("Heritage") is a Texas corporation with its principal place of business in Dallas, Texas.  Heritage also has a place of business in Beverly Hills, in Los Angeles County, California.  Heritage is in the business of, among other things, conducting public auctions, including in Beverly Hills, California.  Upon information and belief, Heritage is acting as the agent for the estate of Whitney Houston with respect to the sale or auction of the Houston Emmy announced to take place in Beverly Hills on June 24, 2016.

14. Defendant Patricia Houston is a resident of Alpharetta, Georgia. Upon information and belief, Defendant Patricia Houston is the executor of Ms. Houston's estate, which is auctioning off the Houston Emmy through Heritage in Beverly Hills, California.

15. The Television Academy is ignorant of the true names and capacities of the Defendants who are named herein under the fictitious names DOES 1 through 10.  The Television Academy will seek leave of court to amend this complaint to allege the true names and capacities of such Defendants when ascertained.  The Television Academy is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is an agent or alter ego of each of the other Defendants and is responsible in some manner for the wrongful conduct alleged herein.

16. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has personal jurisdiction over Defendants because, among other things, Defendants are doing business in the State of California and in this judicial district, the acts of infringement and conversion complained of herein are occurring in the State of California and in this judicial district, and Defendants have

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

1  caused injury to the Television Academy and its intellectual property within the

2  State of California and in this judicial district.

3        18.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and

4  (c), and/or § 1400(a).

5  <u>**THE ©EMMY®**</u>

6        19.    Since 1949, as an incentive for members of the television industry to

7  strive for excellence in television and as a means of recognizing persons who make

8  outstanding contributions in their respective creative fields, the Television Academy

9  has conferred annual awards (known to the public as Emmys) to artists in various

10  categories of achievement.

11        20.    The Television Academy's founding fathers initially struggled to name

12  the award. Television Academy founder Sid Cassyd suggested "Ike," the nickname

13  for the television iconoscope tube.  Pioneer television engineer and future Academy

14  president Harry Lubcke suggested "Immy," a nickname for the image-orthicon

15  camera tube instrumental in the technical development of television.  "Immy" was

16  feminized as "Emmy" to complement the design chosen for the statuette, which

17  depicted a winged, idealized woman holding an atom.  Her wings represented the

18  muse of art, and the atom and its electrons the science and technology of the new

19  medium. The Emmy Statuette designed by television engineer Louis McManus,

20  whose wife, Dorothy, served as his model.

21        21.    The Television Academy has never intended that Emmy Statuette

22  copies be treated as articles of trade.  The original statuette is registered under the

23  copyright laws as an "unpublished" work of art: copies of the statuette are not, and

24  never have been, offered for sale or given to the general public.

25

26  <u>**THE TELEVISION ACADEMY MAINTAINS OWNERSHIP OF THE**</u>

27  <u>**EMMY STATUETTE COPIES AND PROVIDES THEM TO ITS AWARDS**</u>

28  <u>**HONOREES SUBJECT TO RESTRICTIONS.**</u>

COMPLAINT
DWT 29844222v3 0050033-001069

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

22.     From 1978 through 1994, a copy of the Applicable Notice was affixed to the base of each Primetime Emmy statuette offered to honorees at the Television Academy's  annual ceremony.[1]  Prior to the ceremony each year, members of the Television Academy's staff individually examined every statuette to ensure it was in good condition (*i.e.*, no chips or breaks), and that it had an intact label affixed to its base.  Attached as **Exhibit A** is a true and correct copy of a photograph of the label setting forth the Applicable Notice and affixed to all Emmy Statuette copies offered to Emmy Award winners from 1978 through 1994, per the Television Academy' policy.  The Applicable Notice provides:

> (i)     the Emmy statuette is the property of and all rights are reserved by the Television Academy of Television Arts & Sciences.
>
> (ii)    the Emmy statuette may not be reproduced or used in any commercial manner unless otherwise permitted by the Television Academy, it being understood that possession of the same is solely for the benefit of the recipient and the recipient's heirs or succession in interest and
>
> (iii)   if a recipient or the recipient's heir or successor in interest proposes to sell or otherwise dispose of the Emmy statuette, such persons shall be obligated to return the statuette to the Television Academy of Television Arts & Sciences which will retain the same in storage in memory of the recipient.

23.     "Prop" or temporary statuettes were provided to winners during the televised Emmy ceremonies from 1978 through 1994.  The winners were offered their individual statuette off camera.

---

[1] The notice language changed in 1995.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

## THE TELEVISION ACADEMY IS CO-OWNER OF THE COPYRIGHT IN THE EMMY STATUETTE.

24.     The Television Academy is the co-owner of the rights and title to the copyright in the Emmy Statuette.

25.     With its sister academy, NARAS, the Television Academy filed an application for copyright registration of the EMMY statuette with the United States Copyright Office on November 27, 1978, and obtained registration No. VAu-000004822.

26.     Because the Television Academy owns the Emmy statuette copies it provides to its awards honorees, the first-sale doctrine does not apply to the copies, thus making any sale of an Emmy statuette copy a violation of the Television Academy's distribution right under the Copyright Act.

## THE WHITNEY HOUSTON EMMY

27.     In 1986, Ms. Houston was awarded a Primetime Emmy Award in the category of Outstanding Individual Performance in a Variety or Musical Program for her performance of "Saving All My Love for You" at the 28th Annual Grammy Awards.  She was accordingly offered a copy of the Emmy Statuette.  Prior to the 1986 ceremony, a member of the Academy's staff individually examined every such statuette to be offered to Emmy Award winners that year to ensure that it was in good condition (*i.e.*, had no chips or breaks), and that it had an intact label affixed to its base.  The Houston Emmy had a copy of the Applicable Notice affixed to its base when it was offered to Ms. Houston.

28.     At all relevant times, Ms. Houston and her heirs, legatees, executors, administrators, estate, successors and assigns agreed to be and were in fact bound by the conditions set forth in the Applicable Notice affixed to the base of the Emmy Statuette copy.

29.     The Television Academy is informed and believes, and on that basis alleges, that possession of the Houston Emmy passed to the trustees of

7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

Ms. Houston's estate following her death.  Upon information and belief, the executor of Ms. Houston's estate has authorized and directed Heritage to auction off certain items from the estate, including the Houston Emmy.

## HERITAGE'S UNLAWFUL PURPORTED SALE OF
## THE HOUSTON EMMY

30.     Heritage was and is well aware of the restrictions placed on the Houston Emmy, and is proceeding with its unlawful purported disposition of the Houston Emmy despite that knowledge.

31.     On June 2, 2016, the Television Academy wrote to Heritage, stating that it had learned Heritage was offering the Houston Emmy statuette for sale at auction.  The letter set forth the language of the Applicable Notice affixed to the base of each Emmy Statuette copy, including the Houston Emmy, provided to Emmy Award winners between 1979 and 1994.

32.     The Television Academy explained to Heritage that an honoree's acceptance of an Emmy Statuette copy is governed by the conditions placed on each such statuette.  Consequently, it advised Heritage that it could not offer the copy for auction or sale because "in doing so you are, in effect, offering to sell property that does not belong to the honoree."  The Television Academy demanded that Heritage cease and desist from any attempt to auction or sell the Houston Emmy.  Finally, the Television Academy asked Heritage to advise its client that if the heirs no longer wanted the Houston Emmy, they could return it to the Television Academy, which would store it in Ms. Houston's name.

## HERITAGE REFUSES TO WITHDRAW THE HOUTON EMMY FROM
## ITS AUCTION.

33.     Over the next two weeks, the Television Academy engaged in further e-mail and telephone correspondence with Heritage's representatives in an effort to avoid litigation.  Heritage's representative stated several times that Heritage wished to avoid litigation.  However, Heritage indicated that it needed information to

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

provide to the trustee of the Whitney Houston estate verifying that the Houston Emmy was subject to restrictions. Heritage then requested that the Television Academy provide "evidence" that the Applicable Notice was affixed to the Houston Emmy when Ms. Houston received it.

34.     To accommodate Heritage's request, the Television Academy prepared a declaration by John Leverence, the Television Academy's Senior Vice President of Award. Mr. Leverence assists in the administration of the Television Academy's annual Primetime EMMY® awards ceremony, and is responsible for overseeing the preparation and issuance of the Emmy Statuette copies offered to Emmy Award winners at each year's ceremony.

35.     Mr. Leverence declared that he personally oversaw the awards administration of the 1986 ceremony. He confirmed that upon delivery of the Emmy Statuette copies from the manufacturer in advance of the ceremony, either he or a member of his staff individually examined every copy to be offered to winners that year to ensure it was in good condition and had an intact label with the Applicable Notice affixed to its base. Mr. Leverence affirmed that "[b]ecause either I or a member of my staff personally examined all statuettes awarded to recipients at the 1986 ceremony to confirm that the statuettes were affixed with the required labels, I can state with utmost assurance that the 1986 Emmy statuette awarded to Whitney Houston had the above-referenced label affixed to its base when it was delivered to her."

36.     Having provided Heritage with verification that the notice was affixed to the Houston Emmy when it was awarded to Ms. Houston, the Television Academy asked Heritage to confirm that it would not auction or attempt to sell or transfer the Houston Emmy. Heritage then reversed course and refused to do so.

37.     The Television Academy also advised Heritage of its copyright in the Emmy Statuette, and further advised Heritage that neither it nor Ms. Houston's estate were or are authorized to sell it. The Television Academy additionally

9

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

advised Heritage that its advertising and sale of the Emmy statuette copy violated its copyright and demanded that Heritage cease and desist from selling the Houston Emmy. Heritage did not respond.

## FIRST CAUSE OF ACTION, FOR CONVERSION

### (Against All Defendants)

38. The Television Academy repeats and incorporates by reference the allegations of paragraphs 1 through 37, above, as though fully set forth at length.

39. The Television Academy has clear legal ownership and the right to possession of the Houston Emmy because Defendants are offering it for sale.

40. The Television Academy has not consented to Defendants' sale of the Houston Emmy or to their refusal to return it. Defendants have therefore intentionally interfered with the Television Academy's exercise of dominion and control over the Houston Emmy, thus engaging in conversion by their wrongful acts and refusals to act and their anticipated dispostion of the Television Academy's property rights in the Houston Emmy.

41. Defendants' conduct has damaged the Television Academy in an amount according to proof, but believed to be substantially in excess of $10,000, exclusive of interest thereon at the legal rate.

42. Defendants have acted with fraud, oppression, or malice, thus entitling the Television Academy to an award of punitive and exemplary damages in an amount sufficient to punish Defendants and deter others in an amount to be determined at trial but not less than three times Defendants' profits realized from their intentional and unlawful conduct.

## SECOND CAUSE OF ACTION, FOR REPLEVIN

### (Against All Defendants)

43. The Televison Academy repeats and realleges the allegations set forth in paragraphs 1 through 37, above, as if fully set forth at length.

10

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

44.     The Television Academy has an absolute right to ownership of the Houston Emmy, which is a unique and identifiable property.

45.     The Houston Emmy is an item of personal property and is being wrongfully detained by Defendants and was not taken for any tax, assessment, or fine, nor seized under any execution or attachment.

46.     Because Defendants have announced their intention to sell the Houston Emmy, the Television Academy has the right to the immediate and exclusive possession of the Houston Emmy.

47.     Upon information and belief, the Houston Emmy is currently in the possession of Defendant Heritage but under the direction and control of Defendant Patricia Houston.

48.     The Television Academy has demanded the return of the Houston Emmy, but Defendants have refused to return it.

49.     The Television Academy is thereefore entitled to the entry of an order directing the immediate return of the Houston Emmy.

## THIRD CAUSE OF ACTION, FOR COPYRIGHT INFRINGEMENT

### (Against All Defendants)

50.     The Television Academy incorporates by reference paragraphs 1 through 37, above, as if fully set forth at length.

51.     The Emmy Statuette is a work of art registered with the United States Copyright Office pursuant to Certificate of Registration No. VAu-00004822, issued November 27, 1978, to the Television Academy and the National Academy of Television Arts and Sciences ("NATAS") jointly.   The Emmy Statuette copyright is valid and subsisting.

52.     Although the Television Academy pays a trophy manufacturer to make copies of the Emmy Statuette for the purpose of honoring winners of the Primetime Emmys, the Television Academy neither sells nor transfers title to those Emmy Statuette copies.  Instead, it retains title to the copies.  When the Television

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

Academy honors an artist, such as Whitney Houston, for an achievement, it lends a copy of the Emmy Statuette to the artist to signify and symbolize that honor. The Television Academy permits all artists so honored to retain possession of an Emmy Statuette copy for life, and permits the artists' heirs and successors in interest to retain custody of the copies to symbolize the achievements of the deceased honorees.

53. When the Television Academy honors an artist and offers the artist a copy of the Emmy Statuette as a symbol of the artist's achievement, the Television Academy places the artist on notice that it retains title to it. When the Television Academy honored Whitney Houston, it affixed a notice to the base of the statuette stating that: "(i) the Emmy statuette is the property of and all rights are reserved by the Academy of Television Arts & Sciences. (ii) the Emmy statuette may not be reproduced or used in any commercial manner unless otherwise permitted by the Academy, it being understood that possession of the same is solely for the benefit of the recipient and the recipient's heirs or succession in interest and (iii) if a recipient or the recipient's heir or successor in interest proposes to sell or otherwise dispose of the Emmy statuette, such persons shall be obligated to return the statuette to the Academy of Television arts & Sciences which will retain the same in storage in memory of the recipient."

54. Pursuant to the Copyright Act, 17 U.S.C. S 106(3), the owner of a copyrighted work has the exclusive rights to "distribute copies . . . of the copyright work to the public by sale or other transfer of ownership" and to authorize such distribution. Without permission or consent of the Television Academy, Defendants distributed the EMMY.

55. Defendants have violated the exclusive distribution right that the Television Academy and NATAS enjoy in the Emmy Statuette and have therefore engaged in copyright infringement pursuant to 17 U.S.C. S 501(a). Defendants

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

cannot claim protection under the "first sale" doctrine because they have never had, and do not have now, title to the Emmy Statuette copy in their possession.

56.    Pursuant to 17 U.S.C. § 502(a), the Court may grant temporary and final injunctive relief to prevent or restrain further violation of the Television Academy's distribution right in the Emmy Statuette copy at issue.

57.    Pursuant to 17 U.S.C. § 503(a), while an action under the Copyright Act is pending the Court may order the impoundment of any copy "claimed to have been . . . used in violation of the exclusive right of the copyright owner."

58.    Pursuant to 17 U.S.C. § 504(a), the Academy is entitled to recover its "actual damages and any additional profits of the infringer[s]" or statutory damages.  Because defendants have been placed on actual notice of the Television Academy's rights in the Emmy Statuette copy in issue and, rather than return it to the Television Academy, have insisted on selling it at auction, defendants' copyright infringement is willful.  Pursuant to section 504(c)(2), the Court may award statutory damages of $150,000 against defendants.

59.    Because the Television Academy is a non-profit entity whose economic existence depends on the exclusivity and achievement symbolized by possession of an Emmy Statuette copy, which economic success would likely be destroyed were the public to believe that Emmy Statuette copies could be bought and sold and symbolized only wealth and not artistic achievement, the Court should exercise its discretion pursuant to 17 U.S.C. S 505 to allow the recovery of all costs, including a reasonable attorney's fee, by the Television Academy from defendants.

## FOURTH CAUSE OF ACTION, FOR DECLARATORY RELIEF

### (Against All Defendants)

60.    The Television Academy hereby realleges and incorporates by reference paragraphs 1 through 59, above, as though fully set forth at length.

61.    An actual controversy has arisen and now exists between the Television Academy, on the one hand, and the Defendants, on the other hand,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

concerning their respective rights and interests in the Houston EMMY.  The
Television Academy contends that the Houston Emmy is owned by the Academy,
and is protected by the Academy's copyright.  The Television Academy is informed
and believes, and on that basis alleges, that the Defendants deny the Television
Academy's contentions.

62.    The Television Academy seeks a judicial determination of its rights
and interests in the Houston Emmy, *i.e.* that the Houston Emmy is held in
constructive trust for the Television Academy.

63.    A judicial declaration is necessary and appropriate so that the
Television Academy and the Defendants may ascertain their rights, interests,
obligations and duties with respect to the Houston Emmy, including their respective
claims of right to possession of the Houston Emmy, and to avoid a multiplicity of
actions.

## **PRAYER FOR RELIEF**

WHEREFORE, the Television Academy prays for judgment in its favor and
against Defendants, and each of them, as follows:

1.    For a preliminary and permanent injunction enjoining and restraining
Defendants and their officers, agents, employees and representatives, and all
persons acting in concert with them, from reproducing, distributing, displaying,
promoting, offering for sale and/or selling, advertising about or distributing the
Houston Emmy;

2.    For damages permitted by law, including without limitation, the
Television Academy's actual damages and Defendants' profits, plus interest, as well
as all statutory, punitive, and exemplary damages permitted;

3.    That the Television Academy be awarded its costs, including
attorneys' fees, as available under the Copyright Act U.S.C. § 101 *et seq.*;

4.    For an order directing Defendants to deliver the Houston Emmy to the
Television Academy immediately;

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

6.     For its costs of suit incurred herein; and

7.     For such other and further relief as the Court may deem just and proper.

DATED: June 22, 2016                    DAVIS WRIGHT TREMAINE LLP
                                        DAVID W. QUINTO
                                        SCOTT R. COMMERSON


                                        By: s/Scott R. Commerson
                                                 Scott R. Commerson
                                        Attorneys for Plaintiff
                                        ACADEMY OF TELEVISION
                                        ARTS & SCIENCES

COMPLAINT
DWT 29844222v3 0050033-001069

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899

## DEMAND FOR JURY TRIAL

The Television Academy hereby demands a jury trial of all issues in this Complaint which are triable to a jury.

DATED: June 22, 2016

DAVIS WRIGHT TREMAINE LLP
DAVID W. QUINTO
SCOTT R. COMMERSON


By: *s/Scott R. Commerson*
       Scott R. Commerson
Attorneys for Plaintiff
ACADEMY OF TELEVISION
ARTS & SCIENCES

16

COMPLAINT
DWT 29844222v3 0050033-001069

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I certify that on June 22, 2016, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the CM/ECF participant(s) noted below.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

By: _/s/ Scott Commerson_
Scott R. Commerson

17

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
Ph: (213) 633-6800 * Fax: (213) 633-6899